UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH MICHAEL FERRANTI, <br><br>                              Plaintiff, <br><br>                -v.- <br><br> ARSHACK, HAJEK & LEHRMAN PLLC and DANIEL ARSHACK, <br><br>                              Defendants. | 20 Civ. 2476 (KPF) <br><br> **OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

      Plaintiff Kenneth Michael Ferranti brings this suit against his former attorney, Daniel Arshack ("Arshack") and the law firm Arshack, Hajek & Lehrman PLLC (the "Firm") (collectively, "Defendants"), for legal malpractice and breach of fiduciary duty. Specifically, Plaintiff alleges that Defendants — who represented him in connection with his criminal prosecution for sexual harassment — failed to convey an initial plea offer accurately, which failure Plaintiff claims caused him to reject that offer and, ultimately, to accept a significantly harsher plea offer. Now before the Court is Defendants' motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the remainder of this Opinion, the Court grants Defendants' motion to dismiss.

# BACKGROUND[1]

## A. Factual Background

### 1. Plaintiff's Arrest and First Plea Offer

Plaintiff was a physician assistant ("PA") employed and licensed to practice in New York from 1996 until January 25, 2019. (Compl. ¶¶ 2, 11). On August 16, 2017, Plaintiff was arrested in New York County in connection with his alleged sexual harassment of two patients. (*Id.* at ¶¶ 12-13). This was Plaintiff's first arrest and first criminal charge. (*Id.* at ¶ 14). On August 21, 2017, Plaintiff retained Defendants to represent him in connection with his criminal case. (*Id.* at ¶ 15; *id.*, Ex. A (the "Retainer Agreement")). Plaintiff paid Defendants a retainer of $100,000. (*Id.* at ¶ 16).

Thereafter, Defendants began negotiating a plea deal with the New York County District Attorney's Office ("DANY") on behalf of Plaintiff. (Compl. ¶ 18). On or about December 18, 2017, Assistant District Attorney Kathryn Werner communicated an initial plea deal to Defendants in their capacity as Plaintiff's counsel, via an email to Arshack. (*Id.* at ¶ 19; *see also id.*, Ex. B (the "First

---

[1] This Opinion primarily draws its facts from Plaintiff's Complaint ("Complaint" or "Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for purposes of this motion, as well as the exhibits attached thereto. *See DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").

For ease of reference, the Court refers to the parties' briefing as follows: Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss as "Def. Br." (Dkt. #12-1); Gregory Koerner's Affirmation in Opposition as "Koerner Aff." (Dkt. #15); Plaintiff's Affidavit in Opposition as "Pl. Aff." (Dkt. #16); and Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion to Dismiss as "Def. Reply" (Dkt. #17). The Court refers to the exhibits attached to the Declaration of A. Michael Furman in Support of Defendants' Motion to Dismiss as "Furman Decl., Ex. [ ]" (Dkt. #12-2).

Plea Offer")).  The offer required Plaintiff to plead guilty to two counts of sexual abuse in the third degree, N.Y. Penal Law § 130.55, a class B misdemeanor, and would have entailed two years of probation and completion of a sex offender treatment program or individual counseling.  (*Id.* at ¶ 20; First Plea Offer).  Werner's email did not mention any requirement that Plaintiff register as a sex offender or surrender his PA license.  (Compl. ¶ 30; *see also* First Plea Offer).

Plaintiff alleges that Defendants inaccurately communicated to Plaintiff that, under the terms of the First Plea Offer, he would be required to register as a sex offender pursuant to New York's Sex Offender Registration Act, N.Y. Correct. Law §§ 168 to 168-w ("SORA").  (Compl. ¶ 23).  Indeed, Defendants purportedly advised Plaintiff to reject the First Plea Offer because the effects of SORA registration included, *inter alia*, the revocation of Plaintiff's PA license and a prohibition on adopting a child.  (*Id.* at ¶ 24).  On or about July 10, 2018, Arshack called Plaintiff to admit his error in interpreting the First Plea Offer, but by then, Plaintiff had already rejected the offer per Defendants' earlier advice.  (*Id.* at ¶¶ 31-32).

    2.  **Plaintiff's Grand Jury Testimony and Second Plea Offer**

Following the rejection of the First Plea Offer, Arshack advised Plaintiff to testify in front of a grand jury because Defendants believed Plaintiff's testimony would give Plaintiff a better chance of avoiding indictment.  (Compl. ¶¶ 33, 35).  Plaintiff alleges that, following Defendants' advice, he testified before a grand

jury by reading a prepared statement written by the Defendants. (*Id.* at ¶ 34).[2] However, Plaintiff was indicted following his grand jury testimony. (*Id.* at ¶ 36).

After Plaintiff was indicted, Werner conveyed a second plea offer to Defendants via email on August 3, 2018. (Compl. ¶¶ 36-37; *id.*, Ex. C (the "Second Plea Offer")). The Second Plea Offer required that Plaintiff plead guilty to: (i) sexual abuse in the third degree, N.Y. Penal Law § 130.55, a class B misdemeanor; (ii) forcible touching, *id.* § 130.52, a class A misdemeanor; and (iii) perjury in the first degree, *id.* § 210.15, a class D felony. (Compl. ¶ 38; *see also* Second Plea Offer). More importantly, for purposes of the instant litigation, the Second Plea Offer subjected Plaintiff to a sentence of six years of probation and additionally required him to: (i) complete a sex offender treatment program or individual counseling; (ii) surrender his PA license; and (iii) execute a waiver of appeal. (Compl. ¶ 38; Second Plea Offer). Plaintiff alleges that the Second Plea Offer contained more serious charges and harsher penalties than the First Plea Offer, in part because of Plaintiff's perjurious testimony before the grand jury. (Compl. ¶¶ 37, 45-46). Werner told Defendants that Plaintiff should consult with outside counsel regarding the Second Plea Offer, and that outside counsel should be present in the event that Plaintiff chose to enter the plea. (*Id.* at ¶ 40; Second Plea Offer).

Defendants recommended that Plaintiff retain Aaron Mysliwiec in connection with the Second Plea Offer. (Compl. ¶ 41). However, Defendants

---

[2] Plaintiff alleges that his grand jury testimony took place in July 2018 (*see* Compl. ¶ 33); however, Plaintiff's felony plea allocution specifies that he testified before the grand jury on or about March 12, 2018 (*see* Furman Decl., Ex. E).

4

did not disclose that Mysliwiec was Arshack's former colleague. (*Id.* at ¶ 42).[3] As a result, Plaintiff retained an additional outside attorney, Paul Prestia, to represent him. (*Id.* at ¶ 43). At some point thereafter, Arshack, Prestia, and Mysliwiec each met with prosecutors at DANY — it is unclear whether together or individually — to request that the First Plea Offer be reinstated and offered to Plaintiff. (*Id.* at ¶ 44). However, DANY refused to re-extend the First Plea Offer, purportedly because of Plaintiff's perjurious grand jury testimony. (*Id.* at ¶ 45).

Plaintiff alleges that, to avoid a significant prison sentence, he accepted the Second Plea Offer. (Compl. ¶ 46). Plaintiff states, however, that he would have accepted the First Plea Offer had Defendants accurately conveyed it to him. (*Id.* at ¶ 48). As a result of accepting the Second Plea Offer instead of the First Plea Offer, Plaintiff claims that he has "lost his employment, the ability to be employed, and the ability to adopt a child." (*Id.* at ¶ 50). Furthermore, Plaintiff alleges that he "has suffered significant economic loss and incalculably severe emotional distress." (*Id.*).

**B.    Procedural Background**

Plaintiff filed the Complaint in this action on March 20, 2020, alleging professional negligence in the form of legal malpractice and breach of fiduciary duty. (Dkt. #1). On May 7, 2020, Defendants requested a pre-motion conference regarding their intention to file a motion to dismiss. (Dkt. #10).

---

[3]   Plaintiff does not allege that he retained Mysliwiec; however, Plaintiff alleges that Mysliwiec met with DANY prosecutors on his behalf. (*See* Compl. ¶ 44).

5

Due to the COVID-19 pandemic and attendant restrictions on courthouse access, the Court dispensed with its requirement that the parties appear for a pre-motion conference, granted Defendants' request to pursue a motion to dismiss, and set a briefing schedule for Defendants' anticipated motion. (Dkt. #11). Defendants filed their motion to dismiss and supporting papers on June 12, 2020. (Dkt. #12). Plaintiff filed an affirmation from his attorney, Gregory Koerner, in opposition to the Defendants' motion on July 24, 2020. (Dkt. #15). Four days later, Plaintiff submitted his own affidavit in opposition to the instant motion. (Dkt. #16). Briefing concluded on August 7, 2020, when Defendants filed their reply brief. (Dkt. #17).

## DISCUSSION

### A.  Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir.

2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion brought under Fed. R. Civ. P. 12(b)(6)). Here, Defendants ask that the Court take judicial notice of several documents related to Plaintiff's underlying criminal case. The Court may take judicial notice of a document filed before another court and may consider such documents for the fact that they exist, but not for the truth of the matters asserted therein. *See Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). Accordingly, the Court takes judicial notice of the following documents from Plaintiff's underlying criminal case: the criminal complaint (Furman Decl., Ex. B ("NYS Complaint")),

the indictment (*id.*, Ex. C ("NYS Indictment")), and the transcripts of Plaintiff's plea allocutions (*id.*, Ex. D ("Misdemeanor Plea Allocution"); *id.*, Ex. E ("Felony Plea Allocution")).

B.   Analysis[4]

   1.   **The Court Dismisses Plaintiff's Breach of Fiduciary Duty Claim**

As an initial matter, the Court addresses Defendants' argument that Plaintiff's breach of fiduciary duty claim should be dismissed as duplicative of his legal malpractice claim. (*See* Def. Br. 9-10). Plaintiff does not address this issue in his opposition submissions, and has thus arguably abandoned his breach of fiduciary duty claim. (*See generally* Koerner Aff.; Pl. Aff.). *See Jennings* v. *Hunt Cos.*, 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) ("A district court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted) (collecting cases)). In any event, Plaintiff's

---

[4]   Because subject matter jurisdiction in this case is based upon diversity of citizenship (*see* Compl. ¶ 9), the Court applies the choice of law rules of the forum state, *see Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). New York choice of law rules mandate application of the substantive law of the state with the most significant relationship to the legal issue. *See, e.g., Skaff* v. *Progress Int'l, LLC*, No. 12 Civ. 9045 (KPF), 2014 WL 5454825, at *8 (S.D.N.Y. Oct. 28, 2014) (quoting *Intercontinental Plan., Ltd.* v. *Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)). For tort claims, including legal malpractice and breach of fiduciary duty, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Negri* v. *Friedman*, No. 14 Civ. 10233 (GHW), 2017 WL 2389697, at *3 (S.D.N.Y. May 31, 2017) (quoting *Cooney* v. *Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)); *Wolfson* v. *Moskowitz*, No. 08 Civ. 8796 (DLC), 2009 WL 1515674, at *5 (S.D.N.Y. June 1, 2009) ("In a legal malpractice case, New York's interest is predominant when the attorney being sued is licensed in New York and the underlying trial took place in New York."). Thus, New York has the greatest interest in this litigation because (i) Defendants' representation in the underlying criminal matter occurred in New York, (ii) Arshack is licensed to practice as an attorney in New York, and (iii) the Firm's principal place of business is in New York. (Compl. ¶¶ 3, 5, 13, 15). Accordingly, the Court will apply New York law to Plaintiff's claims.

8

breach of fiduciary duty claim arises out of the same conduct as his legal malpractice claim: Defendants' failure to disclose the correct plea deal to the Plaintiff. (*Compare* Compl. ¶¶ 54, 59 (legal malpractice), *with id.* at ¶¶ 63-64, 67 (breach of fiduciary duty)). Further, Plaintiff's breach of fiduciary duty claim seeks damages identical to those sought pursuant to his legal malpractice claim. (*See id.* at ¶¶ 59, 67).

Under New York law, "where a claim for breach of fiduciary duty is 'premised on the same facts and seek[s] the identical relief' as a claim for legal malpractice, the claim for fiduciary duty 'is redundant and should be dismissed.'" *Nordwind* v. *Rowland*, 584 F.3d 420, 432-33 (2d Cir. 2009) (quoting *Weil, Gotshal & Manges, LLP* v. *Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (1st Dep't 2004)) (alteration added); *see also Reid* v. *Sack*, No. 20 Civ. 1817 (VM), 2021 WL 100490, at *4 (S.D.N.Y. Jan. 12, 2021) ("[I]t is not the theory behind the claim that renders it duplicative, but rather the factual premises and damages that matter."). Here, Plaintiff's breach of fiduciary duty claim is premised on the same conduct and seeks the same relief as does his legal malpractice claim. Accordingly, Plaintiff's breach of fiduciary duty claim is redundant and must be dismissed. *See, e.g.*, *Windsor Sec., LLC* v. *Arent Fox LLP*, 273 F. Supp. 3d 512, 520 n.3 (S.D.N.Y. 2017) (declining to address breach of fiduciary duty claim because it was duplicative of legal malpractice claim, where claims were premised on same conduct and sought identical relief).

### 2. The Court Dismisses Plaintiff's Legal Malpractice Claim

Having dismissed Plaintiff's breach of fiduciary duty claim, the Court turns to his legal malpractice claim. In relevant part, Plaintiff alleges that Defendants: (i) failed to communicate the First Plea Offer to Plaintiff correctly, which caused the Plaintiff to reject such offer, and (ii) carelessly advised Plaintiff to testify in front of the grand jury — including by preparing and guiding Plaintiff's testimony — which led to a felony charge of perjury that Plaintiff could have avoided. (*See* Compl. ¶¶ 39, 47-48). Defendants argue that Plaintiff is barred from asserting a legal malpractice claim because his guilty plea in the underlying criminal case is undisturbed. (*See* Def. Br. 7-9; Def. Reply 4-5). Defendants further argue that even if Plaintiff's claim were not barred by his undisturbed guilty plea, Plaintiff fails to plead a claim for legal malpractice under New York law. (Def. Br. 10-15; Def. Reply 5-7). The Court agrees on both counts and, for the reasons articulated below, dismisses Plaintiff's legal malpractice claim.

#### a. Plaintiff Cannot Assert a Colorable Claim of Innocence

As a threshold matter, under New York law, "to raise a legal malpractice claim ... arising from a criminal proceeding, the 'plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense, for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie.'" *Klein* v. *Talkin, Muccigrosso & Roberts, LLP*, 415 F. App'x 288, 289 (2d Cir. 2011) (summary order) (quoting *Carmel* v. *Lunney*, 70 N.Y.2d 169, 173 (1987)). "[I]n order to 'open the door for even a colorable

claim of innocence, criminal defendants must free themselves of the conviction[,]'" *Sash* v. *Schwartz*, 356 F. App'x 555, 556 (2d Cir. 2009) (summary order) (quoting *Britt* v. *Legal Aid Soc., Inc.*, 95 N.Y.2d 443, 447 (2000)), which means here that Plaintiff's undisturbed guilty plea bars him from raising a colorable claim of innocence, and therefore precludes him from asserting a viable claim for legal malpractice, *see Carmel*, 70 N.Y.2d at 173.

It is undisputed that Plaintiff pleaded guilty in the underlying criminal proceeding to sexual abuse in the third degree, forcible touching, and perjury in the first degree. (Compl. ¶¶ 38, 46; *see also* Misdemeanor Plea Allocution; Felony Plea Allocution). It is also undisputed that Plaintiff has not challenged his guilty plea to those offenses. (*See generally* Compl.). Indeed, Plaintiff does not even argue that he has a colorable claim of innocence. Rather, Plaintiff emphasizes that he would have accepted the First Plea Offer if not for Defendants' misrepresentations about the consequences of that offer. (*Id.* at ¶ 48). Specifically, Plaintiff claims that he rejected the First Plea Offer because Defendants incorrectly told him that he would have to register as a sex offender under SORA. (*Id.* at ¶¶ 24, 28). Plaintiff alleges that he later "had no choice but to then accept the district attorney's second plea offer in order to avoid a significant prison sentence[.]" (*Id.* at ¶ 46).

Defendants contend that because under New York law, an undisturbed guilty plea bars recovery for a legal malpractice claim, Plaintiff's claim must be dismissed. (*See* Def. Br. 8). Here, too, Plaintiff does not respond to this argument, and has arguably abandoned the claim. (*See generally* Koerner Aff.;

11

Pl. Aff.). Here, too, the claim fails as inadequately pleaded. When it first articulated the rule requiring vacatur of the relevant criminal convictions in *Carmel* v. *Lunney*, the New York Court of Appeals explained that "criminal prosecutions involve constitutional and procedural safeguards designed to maintain the integrity of the judicial system," which "make criminal malpractice cases unique, and policy considerations require different pleading and substantive rules." 70 N.Y.2d at 173-74. Later decisions implementing this rule have emphasized the "public policy" barring a malpractice action "arising from negligent representation in a criminal proceeding by a plaintiff who cannot assert his innocence[.]" *Malpeso* v. *Burstein & Fass*, 684 N.Y.S.2d 201, 201 (1st Dep't 1999) (citing *Carmel*, 70 N.Y.2d at 173-74). These decisions have repeatedly held that the effect of any alleged negligent representation during a criminal proceeding is "irrelevant" when a plaintiff cannot assert that he is innocent of the criminal conduct for which he was convicted. *Id.*; *see also Biegen* v. *Paul K. Rooney, P.C.*, 703 N.Y.S.2d 121, 121 (1st Dep't 2000).

The cases that Defendants cite address claims where plaintiffs assert legal malpractice arising out of their attorneys' purportedly negligent or incomplete advice, which advice caused or induced plaintiffs to plead guilty when they otherwise would not have. *See, e.g., Yong Wong Park* v. *Wolff & Samson, P.C.*, 867 N.Y.S.2d 424, 424 (1st Dep't 2008) (alleging flawed advice about collateral immigration consequences of guilty plea); *Casement* v. *O'Neill*, 812 N.Y.S.2d 649, 650 (2d Dep't 2006) (alleging that negligent advice caused

plaintiff to plead guilty to charge that could not have been proven at trial). Notably, Plaintiff's claim here does not challenge his guilty plea or allege that Defendants' malpractice induced him into accepting the Second Plea Offer. Instead, Plaintiff argues that Defendants' misrepresentations deprived him of an opportunity to accept a more favorable plea offer and, as a result of that deprivation, he was forced to accept a harsher outcome. But this does not save Plaintiff's claim. As the Second Circuit recognized, "New York courts have not limited [*Carmel*'s] requirement to malpractice claims relating to the conviction," but rather "have held that '[t]he fact that respondent's alleged negligence did not contribute to petitioner's criminal conviction is irrelevant.'" *Klein*, 415 F. App'x at 289 (quoting *Swain* v. *County of Albany*, 702 N.Y.S.2d 175, 176 (3d Dep't 2000)). As discussed below, New York courts have consistently applied *Carmel* to bar malpractice claims when the malpractice plaintiff's guilty plea remains undisturbed, even when the malpractice claim arises out of issues collateral to the conviction. *See, e.g., Malpeso*, 684 N.Y.S.2d at 201 ("[T]he causal effect, or lack thereof, of the alleged malpractice on the plaintiff's conviction is irrelevant."). Thus, New York law bars Plaintiff's malpractice claim even though his claim is not rooted in the fact of his guilty plea.

The Court's conclusion is borne out by numerous cases from the Appellate Division. For example, in *Biegen* v. *Paul K. Rooney, P.C.*, the plaintiff, who was convicted after pleading guilty to tax evasion, claimed that the defendants had committed legal malpractice by erroneously advising him about the length of his sentence. 703 N.Y.S.2d at 121. Although the claim was "not

13

asserted as a collateral attack" on the plaintiff's guilty plea and instead related to sentencing matters following conviction, the First Department noted in affirming the trial court's grant of summary judgment that the public policy considerations articulated in *Carmel* and its progeny applied with equal force, and held that the guilty plea barred such a claim. *Id.*

Similarly, in *Malpeso* v. *Burstein & Fass*, the plaintiff, who was ultimately convicted, brought a legal malpractice claim based on the defendants' representation of him at a bail hearing. 684 N.Y.S.2d at 201. The trial court dismissed the action and the First Department affirmed, holding that the *Carmel* rule and its public policy rationale applied even though the plaintiff was not claiming that the alleged malpractice "induced, or otherwise had any causal effect on, plaintiff's ultimate conviction." *Id.* (citing *Carmel*, 70 N.Y.2d at 173-74).

And in *Rosado* v. *Legal Aid Society*, the plaintiff had served three years of his sentence for manslaughter in the second degree before his conviction was overturned due to improperly admitted evidence at trial. 784 N.Y.S.2d 154, 155 (2d Dep't 2004). Rather than proceed to a second trial on the manslaughter charge, the plaintiff pleaded guilty to reckless endangerment in the second degree. *Id.* The plaintiff then brought a claim of legal malpractice against his appellate counsel for failing to make a timely application to the court for his release while his appeal was pending, which failure meant that the plaintiff ended up serving a substantial portion of his sentence for a conviction that was ultimately overturned. *Id.* However, in affirming the trial

14

court's grant of summary judgment in favor of counsel, the Second Department held that *Carmel* still barred the plaintiff's claim because "the fact that the alleged malpractice neither induced nor otherwise had any causal effect on the plaintiff's ultimate conviction, and instead allegedly caused the plaintiff to remain in prison longer than necessary, has no bearing[,]" inasmuch as the plaintiff could not assert his innocence after pleading guilty. *Id.* (citing *Carmel*, 70 N.Y.2d at 173).

These cases demonstrate that a legal malpractice claim arising from representation in a criminal proceeding will be barred if a plaintiff's guilty plea remains undisturbed, regardless of whether the claim directly attacks the defendant-attorney's performance vis-à-vis the guilty plea, or arises out of collateral matters unrelated to the fact of the plea itself. *See also, e.g., Kim* v. *Seidler*, 42 Misc. 3d 1232(A), 986 N.Y.S.2d 866 (N.Y. Civ. Ct. 2013) (finding that undisturbed guilty plea barred malpractice claim where plaintiff alleged that attorney filed frivolous appeal to collect additional legal fees). Thus, while Plaintiff here does not argue that Defendants' alleged malpractice caused him to plead guilty, *Carmel* and its progeny still bar his claim. Plaintiff's challenge — that Defendants misinformed him of certain repercussions related to the First Plea Offer — cannot overcome the fact that his guilty plea was entered into voluntarily, with full admission to the conduct alleged in the criminal indictment, and remains undisturbed. *See Carmel*, 70 N.Y.2d at 173 ("[B]ecause plaintiff's conviction by plea ... has not been successfully challenged, he can neither assert, nor establish, his innocence."). That Plaintiff

15

felt he "had no choice but to then accept the district attorney's second plea offer in order to avoid a significant prison sentence" (Compl. ¶ 46), is of no import, as "a plea of guilty bars recovery for legal malpractice, '[r]egardless of [Plaintiff's] subjective reasons for pleading guilty,'" *Casement*, 812 N.Y.S.2d at 650 (first alteration in *Casement*) (quoting *Kaplan* v. *Sachs*, 639 N.Y.S.2d 69, 70 (2d Dep't 1996)). Given the longstanding rule that undisturbed guilty pleas preclude legal malpractice claims under New York law, Plaintiff's legal malpractice claim must be dismissed.

### b. Plaintiff Fails to Plead a Claim for Legal Malpractice

Even if it were not barred by his guilty plea, Plaintiff's legal malpractice claim would still be dismissed because he does not adequately plead a claim. Under New York law, in order to state a claim for legal malpractice, a plaintiff must adequately allege "'[i] that the attorney was negligent, [ii] that the negligence was a proximate cause of the injury [iii] and that [the plaintiff] suffered actual and ascertainable damages.'" *Judd Burstein, P.C.* v. *Long*, No. 15 Civ. 5295 (KPF), 2017 WL 3535004, at *6 (S.D.N.Y. Aug. 16, 2017) (quoting *Rubens* v. *Mason*, 527 F.3d 252, 254-55 (2d Cir. 2008)), *aff'd*, 797 F. App'x 585 (2d Cir. 2019) (summary order).

In sum, Plaintiff alleges that Defendants were negligent by failing to communicate the First Plea Offer accurately, by carelessly advising Plaintiff to testify in front of the grand jury, and by preparing and guiding Plaintiff's perjurious testimony. (Compl. ¶¶ 39, 48-49). Plaintiff argues that, as a result of this negligence, Plaintiff was required to accept the Second Plea Offer instead

of the First Plea Offer, which included the harsher charge of felony perjury and the loss of Plaintiff's PA license. (*See id.* at ¶¶ 20, 28, 38, 48-50). Plaintiff alleges that as a result of accepting the Second Plea Offer instead of the First Plea Offer, he has "lost his employment, the ability to be employed, and the ability to adopt a child." (*Id.* at ¶ 50). Furthermore, Plaintiff alleges that he "has suffered significant economic loss and incalculably severe emotional distress." (*Id.*).

Defendants do not dispute the first element of Plaintiff's legal malpractice claim, *i.e.*, that they were negligent. (*See generally* Def. Br.; Def. Reply). Instead, Defendants contend that Plaintiff may not recover for any non-pecuniary damages, including emotional distress or losing the ability to adopt a child. (Def. Br. 13 n.5; Def. Reply 6). Defendants further argue that with respect to Plaintiff's pecuniary damages, Plaintiff fails to establish the proximate causation element of his malpractice claim because Plaintiff would have had to forfeit his PA license even if he had accepted the First Plea Offer. (*See* Def. Br. 10-13).

The Court agrees that Plaintiff may not recover for his alleged non-pecuniary damages. "New York Law limits a plaintiff's 'recovery in legal malpractice actions to pecuniary damages.'" *Bryant* v. *Silverman*, 284 F. Supp. 3d 458, 471 (S.D.N.Y. 2018) (quoting *McPhillips* v. *Bauman*, 19 N.Y.S.3d 367, 369 (3d Dep't 2015)); *see also Dombrowski* v. *Bulson*, 19 N.Y.3d 347, 352 (2012) (holding that nonpecuniary damages are not recoverable in legal malpractice cases arising out of criminal proceedings because allowing such

damages "would have ... devastating consequences for the criminal justice system"). Thus, in determining whether Plaintiff has adequately pleaded a legal malpractice claim, the Court will only consider damages related to the allegation that "Plaintiff has been unable to work or find any gainful employment," which arises from Plaintiff's loss of his PA license. (*See* Compl. ¶¶ 38, 57).

As to these damages, the Court finds that Plaintiff does not sufficiently plead a "but-for" causal connection between Defendants' purported negligence and any pecuniary damages arising out of the loss of his PA license. To establish proximate cause, a plaintiff "must demonstrate that a reasonable fact-finder could conclude that a 'reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence.'" *Rubens*, 527 F.3d at 255 (quoting *Rubens* v. *Mason*, 387 F.3d 183, 189 (2d Cir. 2004)). Here, Plaintiff cannot elide the fact that his own actions — *i.e.*, choosing to accept the Second Plea Offer — "were intervening causes responsible for the injury that he suffered." *Allen* v. *Antal*, No. 12 Civ. 8024 (NSR), 2015 WL 5474080, at *6 (S.D.N.Y. Sept. 15, 2015) (finding no proximate cause where, *inter alia*, Plaintiff's stipulation to violation of supervised release was intervening cause in harm resulting from violation of supervised release), *aff'd*, 665 F. App'x 9 (2d Cir. 2016) (summary order); *see also Hoffenberg* v. *Meyers*, No. 99 Civ. 4674 (RWS), 2002 WL 57252, at *4 (S.D.N.Y. Jan. 16, 2002) (dismissing malpractice claim where plaintiff's plea, not defendant's representation, proximately caused plaintiff's damages), *aff'd as modified*, 64

18

F. App'x 288 (2d Cir. 2003) (summary order), *order amended and superseded*, 73 F. App'x 515 (2d Cir. 2003) (summary order). Thus, Plaintiff has not sufficiently alleged that Defendant's malpractice, rather than his own guilty plea, proximately caused him to lose his PA license. For this reason as well, the Court dismisses Plaintiff's legal malpractice claim.

### 3. The Court Denies Leave to Amend

"Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court 'should freely give leave [to amend] when justice so requires.'" *Gorman* v. *Covidien Sales, LLC*, No. 13 Civ. 6486 (KPF), 2014 WL 7404071, at *2 (S.D.N.Y. Dec. 31, 2014) (quoting Fed. R. Civ. P. 15(a)(2)). Consistent with this liberal amendment policy, "'[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.'" *Id.* (alteration in *Gorman*) (quoting *Block* v. *First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Nonetheless, "it remains 'proper to deny leave to replead where ... amendment would be futile.'" *Id.* (quoting *Hunt* v. *All. N. Am. Gov't Income Tr., Inc.*, 159 F.3d 723, 728 (2d Cir. 1998)). The Court does not perceive a way in which Plaintiff could plead malpractice claims in accordance with New York law. Accordingly, the Court finds that leave to amend would be futile and dismisses the Complaint with prejudice.

## CONCLUSION

For the reasons set forth in this Opinion, Defendants' motion to dismiss is GRANTED with prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:   March 24, 2021
         New York, New York

                                          KATHERINE POLK FAILLA
                                         United States District Judge